UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) 2:20-CR-27 |
| SARA WILLIAMSON et al., | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Defendant, Sara Williamson, filed a Motion to Suppress evidence obtained during a traffic stop on January 29, 2020. [Doc. 36]. The United States filed a Response in Opposition [Doc. 40]. This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation.

On October 14, 2020, the Court conducted an evidentiary hearing on Defendant Williamson's motion. At the hearing, the Court considered and granted Defendant Hicks' Motion to Adopt Defendant Williamson's Motion to Suppress. [Docs. 42-43][1]. Present at the hearing were Defendant Williamson and her counsel, Bryce W. McKenzie, Esq., Defendant Hicks and his counsel, Jefferson B. Fairchild, Esq., and Assistant United States Attorney Kateri Dahl, Esq. Testifying at the hearing were three investigators from the Johnson City Police Department, William Saulsbury, Curt Stillwagon, and Jeff Legault. The matter is now ripe for resolution. For

---

[1] At the hearing, the Court noted that Mr. Fairchild should have filed the Motion to Adopt at a time earlier than on the morning of the hearing because the hearing then had to be delayed until a later time in the day in order to have his client brought before the Court. Following the hearing, the Court learned that Mr. Fairchild had suffered a personal tragedy in the preceding week which not only made the late filing understandable but demonstrated to the Court Mr. Fairchild's commitment to his client by filing the motion and appearing at the hearing as scheduled rather than seeking a continuance. The Court wanted to "set the record straight" and express its appreciation to Mr. Fairchild for going above and beyond to allow the hearing to proceed as scheduled.

the reasons stated, the undersigned **RECOMMENDS** the Motion to Suppress [Doc. 36] be **GRANTED**.

## I. PROCEDURAL BACKGROUND

On February 11, 2020, the Grand Jury returned a seven-count indictment [Doc.11] against Defendants Williamson and Hicks along with Co-Defendant, Richard Owens charging Defendants Williamson and Hicks with distributing 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 and with possessing firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Defendant Williamson was additionally charged with distributing five (5) grams of methamphetamine, its salts isomers, and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and with possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). Defendant Hicks was also charged with being a felon in possession of a firearm.

Defendant Williamson's Motion to Suppress alleges that law enforcement violated the Fourth Amendment on January 29, 2020 by stopping the vehicle in which she was a passenger without having a search or arrest warrant or other independent reasonable suspicion. Defendant Williamson further argues that evidence procured as a result of the traffic stop, including cash, cellular telephones and statements from Defendants, must be excluded as a result of this constitutional violation. In response, the United States contends that the temporary detention of Defendants Williamson and Hicks by the Johnson City Police Department comports with the Fourth Amendment because it was supported by reasonable suspicion of Defendants' criminal behavior on November 29, 2019, on January 10, 2020 and earlier in the day on the date of the stop. [Doc. 40, pp. 3-4].

## II. FINDINGS OF FACT

On January 29, 2020, Johnson City Police Department Investigator Jeff Legault stopped a vehicle driven by Defendants Hicks and in which Defendant Williamson was a passenger. Defendants were known to the Johnson City Police Department as actors in an ongoing drug distribution ring prior to Officer Legault's stop. An investigation into possible drug activity by Defendants Williamson and Hicks had been ongoing since at least late 2019. On November 26, 2019, a confidential informant working for the Johnson City Police Department made a controlled buy of an ounce of methamphetamine from Defendant Williamson at 902 North Barton Street, Johnson City, Tennessee. The informant had prearranged the deal through Defendant Hicks via Facebook, and Defendant Hicks was present during the transaction. According to Investigator Stillwagon, this initial investigation went stale following the controlled buy.

Later, on January 10, 2020, a confidential informant went with Co-Defendant Owens to 2011 Clinchfield Street to buy an ounce of methamphetamine from Michael Orsi. Upon their arrival there, Co-Defendant Owens and the confidential informant were advised that Mr. Orsi had been arrested. At that time, Co-Defendant Owens told the informant he would go see "Juicy," a.k.a. Defendant Williamson, and they proceeded to 902 North Barton Street where the buy had been made in November 2019. When they arrived at the North Barton Street residence, Co-Defendant Owens took the informant's money and went inside, coming back out with methamphetamine for the informant. The confidential informant did not see Defendant Williamson hand the drugs to Co-Defendant Owens because the informant remained in his vehicle while Co-Defendant Owens went inside.

Then, on January 29, 2020, a confidential informant, acting at the direction of Investigator William Saulsbury, attempted to buy an ounce of methamphetamine. The confidential informant

originally was to buy an ounce of methamphetamine from Sara Jackson, but Ms. Jackson did not have any drugs to sell on that date and told the informant to go see Defendant Williamson, offering to reach out to Defendant Williamson on the informant's behalf. The confidential informant then went to Defendant Williamson's home at 902 North Barton Street and attempted to buy an ounce of methamphetamine from her, utilizing $500.00 in marked bills provided by law enforcement, but Defendant Williamson refused, telling the informant he was on the "snitch list." As the informant was leaving, Co-Defendant Owens and Defendant Hicks followed him out and told him that Defendant Hicks would sell him the methamphetamine he came to buy but Defendant Hicks' supply of methamphetamine was on its way from Mountain City, Tennessee. Co-Defendant Owens further stated that the supplier would be there in about thirty minutes and he and Defendant Hicks proceeded to collect payment from the informant before he left. During the transaction, Co-Defendant Owens took a black handgun out of his waistband and held it at his side. Co-Defendant Owens and Defendant Hicks did not timely make good on their promise to provide the drugs and kept the informant's money. Officers determined that Co-Defendant Owens and Defendant Hicks stole the confidential informant's money and as a result sought a search warrant for the 902 North Barton Street home in hopes of finding the marked bills on the premises.

Following the transfer of money from the confidential informant to Co-Defendant Owens, Investigator Stillwagon was stationed in the area to monitor activities at the North Barton Street property while the search warrant was obtained. While conducting this surveillance, Investigator Stillwagon observed a car leaving the address and noted that Defendant Hicks was driving, and Defendant Williamson was a passenger in the vehicle. He radioed Investigator Legault who spotted the car and began following it, ultimately stopping Defendants in a Walgreens parking lot in Johnson City. Investigator Legault testified that he was close by when he received Investigator

Stillwagon's call and that the Walgreens where he stopped Defendants was located about a mile from Defendants' residence. After Investigator Legault stopped the vehicle, his superior, Lieutenant Mike Adams,[2] instructed him to secure potential evidence in the vehicle and arrest Defendant Williamson. Investigator Legault testified that he had not observed Defendant Hicks commit any traffic violation that would provide an independent basis for the stop.

Once Defendants' vehicle was stopped, Investigator Legault activated his body camera and approached the vehicle. He briefly spoke with the driver, Defendant Hicks, before moving to the front passenger side door to speak with Defendant Williamson. She was directed by the investigator to step outside the vehicle. When Defendant Williamson asked whether the investigator had a warrant, he stated that he did have a warrant. He then told Defendant Williamson she was being detained on pending charges and that "everything in here is going with me," referring to the content of the vehicle. After Investigator Legault made those statements to her, Defendant Williamson agreed for him to search her purse. From that search, Investigator Legault located marked bills used by the confidential informant during the January 29, 2020 controlled buy, although it appears that it was only after the detention of Defendants that officers confirmed these bills included some of those provided by the confidential informant.

Investigator Legault also stated that the reason for his concern as to what Defendant Williamson might possess arose from what she might have removed from the residence she had just left. Investigator Legault testified that he ultimately detained Defendants Williamson and Hicks, placed them in handcuffs and transported them to Johnson City Police Department Headquarters at the instruction of his supervisor. The bodycam footage from the stop demonstrates that Lt. Adams instructed Investigator Legault to detain both Defendants in order for officers to

---

[2] Lieutenant Adams was a sergeant at the time of the incident in question but has since been promoted to Lieutenant.

obtain and execute a search warrant for Defendants' residence without them being able to communicate with anyone else prior to the search, and specifically instructed Investigator Legault to confiscate their phones. Investigator Legault testified that no search of the vehicle was conducted prior to Defendants being transported and the car was not towed. The investigator thought they had gone back later and looked into the windows of the vehicle but did not find anything when doing so. Investigator Legault's testimony also indicates that he mistakenly believed that there were charges pending for Ms. Williamson at the time he transported Defendants to police headquarters.

While Investigator Legault originally testified that the stop and detention occurred after a search warrant had been issued for the North Barton Street residence, his bodycam recording of stop demonstrated that the search warrant was still being prepared for submission to a judge when Defendants were stopped. Investigator Legault conceded that to be the case after the recording was played by Defendant Williamson's counsel during the hearing. Investigator Stillwagon, who also testified at the hearing, stated that he was independently planning to arrest Defendant Williamson on the date of the stop based on the November 2019 controlled buy but acknowledged that an arrest warrant had not been issued.

### III. LEGAL ANALYSIS

The Court is asked to determine whether Investigator Legault's stop and search of Defendants Hicks and Williamson complies with the Fourth Amendment. To answer this question, the Court looks first to whether Officer Legault had either a valid warrant or reasonable suspicion to rely upon in initiating the stop, and, if so, whether his subsequent search of Defendant Williamson's purse was constitutional.

### a. *The search occurred before any warrant was issued.*

Officer Legault initially took the position that the stop was based upon the search warrant issued for Defendants' North Barton Street home, but ultimately conceded the warrant had not been issued at the time he initiated the stop. To comply with the Fourth Amendment, the officer stopping a vehicle "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In determining whether a stop was constitutional, *Terry* analysis asks, "whether the officer's action was justified at is inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20. The Supreme Court has further stated that "an automobile stop is subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). Where officers possess a valid warrant for persons known to officers to be travelling in a vehicle, a stop of that vehicle is not "unreasonable." *United States v. White*, 162 Fed. App'x. 520, 523 (6th Cir. 2006) (applying *United States v. Hudson*, 405 F.3d 425, 432 (6th Cir. 2005) (setting forth a standard for police stops of vehicles believed to be carrying persons wanted on warrants)).

In the instant case, at the direction of his superior, Investigator Legault stopped Defendants Williamson and Hicks because officers suspected that Defendant Hicks, along with Co-Defendant Owens, had stolen a confidential informant's money earlier in the day and they wanted to be sure to preserve any evidence Defendants Williamson and Hicks might have with them; however, the investigator lacked a "valid warrant" of any type. *White*, 162 Fed. App'x. at 523. While Investigator Legault knew that a search warrant was likely to be issued imminently for the North Barton Street address, that warrant had not been issued at the time Defendants' vehicle was stopped. Although Investigator Stillwagon also testified that he intended to arrest Defendant

Williamson on the day of the stop as a result of the controlled buys conducted on November 26, 2019 and on January 10, 2020, he had not obtained a warrant for her arrest at the time of the stop. For these reasons, the stop, search, and seizure of Defendants was not made pursuant to any warrant.

Even if the police had procured a valid search warrant for the North Barton Street residence before the stop, the warrant could not have been used to support the detention in question. When executing a warrant on a residence, officers have "a limited authority to detain the occupants of the premises while a proper search is conducted." *United States v. Bohannon,* 225 F.3d 615, 616 (6th Cir. 2000) (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). If a vehicle is to be stopped in conjunction with a search warrant issued for the premises from which the vehicle is departing, detention of the vehicle must be sought "as soon as practicable" after it departs the location to be searched. *United States v. Cochran*, 939 F.2d 337, 339 (6th Cir. 1991) (holding that where a defendant was stopped on the same street where his house was located, "almost immediately after exiting his residence[,]" detention under *Summers* was proper.).

In this case, Investigator Stillwagon was conducting surveillance of the property at issue and observed Defendants driving away from the residence. Rather than stopping the vehicle before it left the premises, Investigator Stillwagon radioed Investigator Legault to let him know that Defendants had left the premises. Investigator Legault was in the vicinity, spotted Defendants' vehicle soon after it departed the North Barton Street property and followed it for a time before pulling it over. As a result, Defendants no longer qualified as "occupants" of the North Barton Street residence for purposes of this limited detention rule. Accordingly, even if a properly executed search warrant for the North Barton Street home had existed at the time of the stop, it would not have provided a constitutionally permissible basis for the stop.

### *b. The search is not permitted by an exception to the warrant requirement.*

At issue is whether Investigator Legault's stop was supported by reasonable suspicion of criminal activity such that it was permissible absent a warrant. The Fourth Amendment guarantees "[t]he right of the people to be secure ... against unreasonable searches and seizures...." U.S. Const. amend. IV. A traffic stop by a police officer is a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). The "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity.'" *United States v. Rios*, 830 F.3d 403, 429 (6th Cir. 2016) (quoting *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012)). A person may be subject to a vehicle stop if there is "reasonable, articulable suspicion that the person has been, is, or is about to engage in criminal activity." *United States v. Hensley*, 469 U.S. 221, 227 (1985).

To determine whether reasonable suspicion existed at the time of the stop, the Court asks whether the officer conducting the stop could point to "specific and articulable facts [that], taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. The Court assesses the reasonableness of the vehicle stop based on the totality of the circumstances surrounding the stop. *United States v. Sokolaw*, 490 U.S. 1, 8 (1989). In considering the circumstances surrounding a warrantless stop, the Court notes that the officer making the stop may act in reliance on the reports of other officers. *Humphrey v. Mabry*, 482 F.3d 840, 847-48 (6th Cir. 2007). An officer may similarly rely on information provided by a confidential informant, as knowledge necessary for reasonable suspicion need not come from an officer's observations alone. *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993); *see e.g. United States v. Braggs*, 23 F.3d 1047, 1050 (6th Cir. 1994) (Where an informant provided a tip that a specific suspect would

be travelling in a specific vehicle to sell drugs, an investigatory stop was reasonable). Timing of an investigatory stop may also be considered in assessing the reasonableness of the stop. The Sixth Circuit has noted that the passage of time between an alleged criminal activity and an investigative stop is one factor considered "in determining whether officers had specific and articulable facts which constituted reasonable suspicion . . . ." *United States v. Marxen*, 410 F.3d 326, 330 n. 4 (6th Cir. 2005) (citing *Hensley*, 469 U.S. at 234) ("[a] brief stop and detention at the earliest opportunity after the suspicion arises is fully consistent with the principles of the Fourth Amendment.")). The Sixth Circuit has also observed that "restraining police action until after probable cause is obtained would not only hinder the investigation but might also enable the suspect to flee and remain at large." *Id.* (citing 469 U.S. at 229).

In the instant action, Investigator Legault testified that he did not observe Defendant Hicks commit any traffic violation before stopping the vehicle. Instead, Investigator Legault pulled the vehicle over in which Defendants were riding at the instruction of his supervisor based upon Defendant Williamson's presence in the vehicle and because officers believed the vehicle might contain the $500.00 in marked bills allegedly stolen from a confidential informant earlier in the day. Defendant Williamson had refused to engage with the confidential informant on the date in question because she said he was on a snitch list. It was several minutes into Investigator Legault's stop of the vehicle before he radioed his supervisor to ask whether Defendant Hicks should be brought to police headquarters.

The Court will first analyze whether the alleged theft that occurred earlier in the day on the date Defendants' vehicle was stopped could provide reasonable suspicion for Investigator Legault to stop the vehicle. In Tennessee, theft of $1,000.00 or less is a Class A misdemeanor. Tenn. Code Ann. § 39-14-105(a)(1). For that reason, the stop to determine whether Defendants had evidence

in their possession pertaining to the alleged theft of a confidential informant's money earlier in the day would constitute a stop made to investigate a completed misdemeanor. At times a completed misdemeanor will provide the requisite reasonable suspicion to allow officers to conduct an investigatory stop. *United States v. Jones,* 953 F.3d 433, 436 (2020). The Sixth Circuit has specifically directed that the "facts-and-circumstances test" set forth in *United States v. Hensley,* 469 U.S. 221, 226 (1985) be used to address whether a specific completed misdemeanor will support reasonable suspicion for a stop, noting that after such analysis "cases sometimes come out on the side of the government … sometimes on the side of the defendant." *Jones,* 953 F.3d 433 at 436 (citing to *United States v. Moran,* 503 F.3d 1135, 1143 and *United States v. Grigg,* 498 F.3d 1070, 1081-83). We are directed to look not so much to the label of misdemeanor versus felony in making the analysis but to the conduct itself. *Id.* at 436-37.

> Determining whether a misdemeanor provides a proper basis for a stop requires
>> balancing the interests in public safety and personal liberty. The inquiry turns not on whether the suspect already completed a crime. It turns on the nature of the crime, how long ago the suspect committed it, and the ongoing risk of the individual to the public safety. Under this approach, the Fourth Amendment correctly appreciates the distinction between officers who illegitimately invoke *Terry* to stop someone who ran a red light sixth months ago and legitimately use it to stop someone who assaulted a spouse in the past half hour.

*Id.* at 437.

In reliance on *Hensley,* the *Jones* Court notes that it is important to consider a number of factors when balancing these public safety and personal liberty issues, including: 1) whether the stop will promote "crime prevention"; 2) whether public safety will be furthered; 3) whether the Government's interest in "'solving crimes and bringing offenders to justice'" is particularly strong in the case, and 4) whether requiring the Government to wait until it obtains probable cause will

unreasonably impede an investigation or potentially allow a suspect to flee. *U.S. v. Jones* at 437-38 (quoting in part *U.S. v. Hensley* at 228-29).

The facts developed at the hearing in this cause demonstrate that at the time of the stop officers had formed a belief that Defendant Hicks and Co-Defendant Owens had stolen the money provided to them by the officers' confidential informant for the purpose of purchasing drugs. Defendant Hicks and Co-Defendant Owens had advised the confidential informant that they had no drugs with them at the time the confidential information handed them money but that they were expecting a delivery shortly. Investigator Stillwagon testified that he maintained the North Barton Street property under surveillance throughout the day but if he saw any other vehicles come onto the property after officers' confidential informant left, he did not so testify at the hearing. As a result, officers had no reason to believe that Defendants Williamson and Hicks would have drugs in their possession at the time they left.

In analyzing the applicable factors to determine whether the theft at issue provided reasonable suspicion, the Court first notes that at the moment of the stop, there was no reason for Investigator Legault to believe the stop would promote crime prevention. Officers had no reason to believe that Defendants Williamson and Hicks had plans to imminently engage in further illegal activity. There was also no reason to believe that public safety would be furthered by the stop. Officers had specifically concluded that Defendants did not have drugs in their possession at that time and had no basis for believing Defendants were in the process of endangering the public in any other way at that moment. The Court further finds that the Government's interest in solving a crime and bringing offenders to justice was not particularly strong at the time of the stop. Prior to the date of the stop, officers had made multiple controlled buys which implicated Defendants Williamson and Hicks providing them with sufficient grounds to obtain arrest warrants for

Defendants, but they had chosen not to do so. The fact that Defendant Hicks and Co-Defendant Owens had apparently stolen a confidential informant's money on the date of the stop did not then provide emergent circumstances for stopping Defendants' vehicle. The Court also cannot find that that law enforcement's investigation would have been unnecessarily impeded or that Defendants were likely to flee if a stop had not been initiated. Again, officers had been in possession of evidence of Defendants' drug activities for at least two months at the time of the stop and the only thing that had changed as of the date of the stop was that law enforcement had determined that they were going to obtain a search warrant and that they were ready to arrest Defendant Williamson; however, no search or arrest warrant had yet been issued when the stop took place. Additionally, officers had no evidence to show that Defendants Williamson and Hicks had suddenly decided to flee. The applicable factors all lead the Court to conclude that the misdemeanor at issue did not provide reasonable suspicion which would permit Officer Legault to stop Defendants' vehicle without running afoul of the Fourth Amendment.

Finally, the Court is called upon to consider whether the controlled buys that law enforcement had arranged involving Defendant Williamson, when considered in conjunction with the theft that occurred on the date of the traffic stop, provide the requisite reasonable suspicion to support the stop. Investigator Legault's suspicion arose from the confidential informant's report that Co-Defendant Owens and Defendant Hicks had taken the marked bills in exchange for drugs; however, Defendant Williamson did not participate in this exchange of funds. In fact, as referenced above, Defendant Williamson had refused to sell drugs to the confidential informant noting that he was on a "snitch list." Prior to the stop, there was no indication that Defendant Williamson was involved in the transaction between the informant and Defendant Hicks and Co-Defendant Owens or that she was to benefit from it.

While law enforcement had successfully used a confidential informant to purchase drugs directly from Defendant Williamson in November 2019 and from her through Co-Defendant Owens earlier in January 2020, those buys were too stale to provide exigent circumstances to support the stop in question. Additionally, prior to the stop, officers had no reason to believe that the "theft" of the confidential informant's money that occurred on the day of the stop involved Defendant Williamson. Therefore, officers could not rely upon Defendant Williamson's prior drug sales to make the stop.

For these reasons, the Court concludes the stop and search lacked a "particularized and objective basis." *Marxen*, 410 F 3d. at 329. Investigator Legault knew Defendant Williamson had declined to sell drugs to the confidential informant. The informant paid Co-Defendant Owens and Defendant Hicks directly for the drugs. Officers had no information through independent investigation or informant tips that would support the belief that the marked bills were in Defendant Williamson's possession when the vehicle was stopped. The informant had not seen Defendant Williamson take the bills nor was it alleged that she was involved in the transaction. Were that the case, the Government would have stronger grounds to suggest that Defendant Williamson's prior drug sales should be considered along with the theft. While the Court is sympathetic to the needs of law enforcement to make timely investigations before suspects or evidence escape discovery, that interest does not excuse premature investigations that are unsupported by particularized tips or information known to law enforcement. *See Hensley*, 469 at 229. For that reason, the stop was not supported by *Terry*.

Evidence derivatively recovered as a result of an unconstitutional seizure must be suppressed as "fruit of the poisonous tree[.]" *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008). For the Court to suppress the evidence at issue, Defendants must show that "but for" the

illegal stop, the evidence would not have been recovered by police. *Id.* Here, neither the marked bills themselves nor Defendant Williamson's association with them would likely have been discovered by law enforcement officers but for those bills being recovered from Defendant Williamson's purse during Investigator Legault's search. Moreover, the statements Defendants seek to suppress would not have been taken at that juncture but for the impermissible stop. Accordingly, evidence recovered from the search of Defendant Williamson's bag, together with statements made by Defendants Hicks and Williamson following the stop must be suppressed. At the same time, suppressing what was seized as a result of the stop has no impact whatsoever on the items seized from the North Barton Street residence pursuant to the search warrant issued for these premises shortly after the stop at issue took place.

IV. CONCLUSION

Investigator Legault stopped Defendants Hicks and Williamson without a warrant and without reasonable suspicion; thus, the seizure fails to comport with the Fourth Amendment and the evidence recovered as a result must be suppressed. For these reasons, the undersigned **RECOMMENDS** that Defendants Williamson's and Hick's Motions to Suppress [Docs. 36 and 42-43] be **GRANTED**.[3]

Respectfully Submitted,

s/Cynthia Richardson Wyrick
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).